USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 11/15/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERICA BARTMAN,

                    Plaintiff,

v.

L'OFFICIEL USA INC., GLOBAL
EMERGING MARKETS NORTH
AMERICA INC., and JALOU
PUBLISHING, INC. a/k/a JALOU
MEDIA GROUP,

                    Defendants.

No. 21-cv-1987 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Erica Bartman commenced this action against Defendants L'Officiel USA Inc., Global Emerging Markets North America Inc., and Jalou Publishing, Inc., asserting claims for breach of contract, wage underpayment in violation of the New York Labor Law, unjust enrichment, and work, labor and services rendered. She seeks damages in the amount of $738,570.43 plus accrued interest and costs. Before the Court is Plaintiff's motion for a default judgment. For the following reasons, the Court denies Plaintiff's motion and sets aside the entry of default against Defendants.

## BACKGROUND

    Between February 2018 and August 7, 2020, Plaintiff was employed by Defendants as the General Manager and/or Chief Revenue Officer of Defendants' jointly owned fashion magazine, L'Officiel USA, and associated websites and social media accounts. Dkt. 15 ("Bartman Aff.") ¶ 5. Plaintiff alleges that the terms of her employment were governed by a contract, which provided that if she was terminated after two years of employment or if she resigned for "good reason," she

would be paid severance equal to twelve months' salary plus a bonus. *Id.* ¶¶ 10-11. "Good reason" was allegedly defined to include non-payment of salary, earned bonuses, or approved expenses. *Id.* ¶ 12. According to Plaintiff, Defendants refused to reimburse her for approved expenses that she incurred on their behalf during her employment. Dkt. 1 ("Compl.") ¶ 44. She contends that Defendants then breached the employment contract by not paying her severance after she— mysteriously—was both "involuntarily terminated" and "resigned for good reason" on the same day. *Id.* ¶¶ 46-48.

Plaintiff filed her Complaint on March 9, 2021. *Id.* She served Defendants on April 13, 2021 by serving their agent, the New York Secretary of State. Dkt. 14 ("Kerner Dec.") ¶ 5; *see* N.Y. Bus. Corp. Law § 306(b)(1) (allowing service of process on an "authorized foreign corporation" through personal service on the Secretary of State or on any person authorized by the Secretary to receive such service). Proof of such service was filed on April 27, 2021. Dkts. 6, 7, 8. Although Defendants' response to the Complaint was due May 4, 2021, no Defendant responded or appeared by that date. The Clerk of Court accordingly issued a certificate of default on May 12, 2021, Dkt. 11, and Plaintiff moved for default judgment on May 14, 2021, Dkt. 13. Defendants promptly retained counsel in response, and on May 26, 2021, they requested an extension of time to oppose the default judgment motion. Dkt. 17. Their opposition and supporting declarations were submitted on June 9, 2021, and Plaintiff's reply papers were submitted on June 15, 2021. Dkts. 23, 24. Defendants appear to concede that service was proper, and instead argue that the entry of default should be vacated for good cause.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 55, a court may, on a plaintiff's motion, enter a default judgment against a defendant that has failed to plead or otherwise defend the action brought against it. Fed. R. Civ. P. 55(b). Default judgment is appropriate "if liability is established as a

matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N. Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Rule 55 also provides, however, that "[t]he court may set aside an entry of default for good cause."[1] Fed. R. Civ. P. 55(c). "Rule 55(c) does not define 'good cause,' but the Second Circuit has instructed district courts 'to consider three criteria in deciding a Rule 55(c) motion: (1) whether the default was willful; (2) whether setting aside the default would prejudice the party for whom default was awarded; and (3) whether the moving party has presented a meritorious defense.'" *Murray Eng'g, P.C. v. Windermere Properties LLC*, No. 12-cv-0052 (JPO), 2013 WL 1809637, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Peterson v. Syracuse Police Dep't*, 467 F. App'x 31, 33 (2d Cir. 2012)). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

The Second Circuit "has expressed on numerous occasions its preference that litigation disputes be resolved on the merits." *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995). Accordingly, "defaults are generally disfavored," particularly where, as here, "substantial sums of money are demanded." *Enron*, 10 F.3d at 96-97. "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* at 96.

---

[1] Unless otherwise noted, case and rule quotations omit all internal quotation marks, citations, and alterations.

3

## DISCUSSION

Considering these factors in light of this Circuit's strong preference for resolution on the merits, the Court finds that Defendants have shown good cause.

### I.     Willfulness

Willfulness refers to "conduct that is more than merely negligent or careless," *Moulton*, 779 F.3d at 186; indeed, "[e]ven gross negligence" does not suffice, *Fischer v. Forrest*, No. 14-cv-1307 (PAE), 2014 WL 2717937, at *3 (S.D.N.Y. June 16, 2014). Rather, a default is willful when it arises from "egregious or deliberate conduct" that is not satisfactorily explained. *Holland v. James*, No. 05-cv-5346 (KMW) (KNF), 2008 WL 3884354, at *2 (S.D.N.Y. Aug. 21, 2008) (quoting *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). A finding of a defendant's willfulness "is relevant but not dispositive" to the default judgment inquiry. *I.L.G.W.U. Nat'l Ret. Fund v. Meredith Grey, Inc.*, 986 F. Supp. 816, 823 (S.D.N.Y. 1997).

"Defendants' failure to file a response to a properly served pleading amounts to a willful default unless convincingly explained." *Saleh v. Francesco*, No. 11-cv-0438 (PKC), 2011 WL 5513375, at *4 (S.D.N.Y. Nov. 10, 2011); *see also FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12-cv-1674 (RJS), 2013 WL 5405699, at *6 (S.D.N.Y. Sept. 23, 2013) (observing, in the stricter Rule 60(b) context, that "courts have held the default to be willful when a defendant simply ignores a complaint without action"). Defendants' explanation for L'Officiel's default is that the company had changed its corporate address but had not registered that address change with the Secretary of State, and therefore did not receive the Complaint. Dkt. 20 ("Brown Dec.") ¶ 3.[2] This behavior

---

[2] Defendants assert that Global Emerging Markets North America Inc. has ceased operations and that Jalou Publishing, Inc. is dissolved. Dkt. 23 ("Opp. MOL") at 5. Given the narrow scope of this motion, the Court does not at this time address whether Jalou Publishing, Inc. and Global Emerging Markets North America Inc. are proper defendants to this lawsuit. The parties may renew and develop those arguments in future dispositive pleadings. For purposes of this motion, the Court discusses good cause as to all Defendants.

is undoubtedly neglectful—but courts facing similar situations have forgiven such neglect "where the defaulting parties did not have actual notice of the litigation." *Walden v. Lorcom Techs., Inc.*, No. 05-cv-3600 (ARR) (RER), 2007 WL 608151, at *3 (E.D.N.Y. Feb. 23, 2007).[3]  "[T]hese decisions are in accord with the Second Circuit's holdings that negligence, carelessness, and even gross negligence, do not necessarily constitute willful conduct." *Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 338 (S.D.N.Y. 2013) (collecting cases).

It is true that Plaintiff has submitted email correspondence indicating that officer-level employees of Defendants were aware of Plaintiff's lawsuit as early as March 11, 2021. Specifically, on that date, Jalou Media Group's Global Deputy CEO emailed Plaintiff's attorney in response to his emailing the Complaint and waiver of service to both her and L'Officiel's CEO; in that email, she requested a phone call to "find the best solution for both" parties. Dkt. 26 ("Kerner Reply Dec.") Ex. A at 3-4. "Courts have held a default to be willful when a defendant knew about the complaint and failed to respond." *Saifullah v. U.S. Parole Comm'n*, No. 90-cv-1961 (ILG), 1991 WL 58280, at *1 (E.D.N.Y. Apr. 5, 1991). That said, the same email chain suggests that the officers may have intended to maintain communication with Plaintiff's counsel rather than ignore the Complaint entirely. *See* Kerner Reply Dec. Ex. A at 6 (April 8, 2021 email from Jalou Global Deputy CEO stating that she had not received a reply from Plaintiff's counsel following her March 11 email). And when Plaintiff's counsel emailed the officers the default judgment motion on May 21, the same Jalou officer responded that their "lawyer w[ould] contact" counsel imminently; Defendants' counsel was retained on May 25 and requested an extension of time to respond on May 26. *Id.* at 9; Dkts. 17, 22 ("Venturini Dec.").

---

[3] Plaintiff mistakenly relies on *FedEx*'s conclusion that the "failure to fulfill [the] obligation of updating the Secretary of State as to [a] new address . . . due to simple 'inadvertence' or 'ministerial error,' without more, does not constitute 'excusable neglect'": *FedEx* concerned a Rule 60(b) motion, which imposes a more rigorous standard on defaulting defendants than does Rule 55(c).  2013 WL 5405699, at *5; *see Enron*, 10 F.3d at 96.

Although this evidence leaves the Court with serious doubts as to whether Defendants' default was deliberate, the Court must resolve those doubts in Defendants' favor. *See Enron*, 10 F.3d at 96. Drawing all inferences in Defendants' favor supports the conclusion that their delay, even in the face of a known lawsuit, might have been the product of confusion and neglect, particularly given their possible lack of familiarity with U.S. legal procedure. And even if Defendants acted willfully, such a finding would not compel default judgment. *Meredith Grey*, 986 F. Supp. at 823 ("Even when defendant's conduct may be considered willful, a default judgment against him may be vacated if he presents valid defenses and plaintiff would not be prejudiced."). The Court therefore turns to the other Rule 55(c) factors.

## II.     Prejudice to Plaintiff

"[I]t is well established that delay alone is not a sufficient basis for establishing prejudice" to the non-defaulting party. *Fischer*, 2014 WL 2717937, at *4. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Murray Eng'g*, 2013 WL 1809637, at *5. Plaintiff has made no such showing. Nor does the Court find any reason to conclude that she would be prejudiced by having this case litigated on the merits. Plaintiff moved for default judgment just ten days after Defendants missed their deadline to answer the Complaint, and Defendants moved to vacate the entry of default less than one month after that passed deadline. There is no indication that this brief delay in the litigation will result in the loss of evidence, make discovery more burdensome, or give Defendants a greater opportunity to collude with each other. Accordingly, the Court finds that setting aside the entry of default will not prejudice Plaintiff.

## III.    Meritorious Defenses

In deciding whether a defaulting party has a meritorious defense, courts consider "whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d

6

at 98. Although a defendant "need not conclusively establish the validity of" his defense, he must articulate it "with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations." *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993). In other words, "a defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Eagle Ins. Co.*, 92 F.3d at 61. Having reviewed the motions, affidavits, and exhibits submitted by the parties, the Court finds that Defendants raise factual issues that constitute meritorious defenses to Plaintiff's claims.

Along with her motion papers, Plaintiff submitted a redline, unsigned version of the purported employment contract Defendants allegedly violated. Bartman Aff. Ex. A. She asserts that Defendants ratified this draft contract when a Jalou Media Group officer responded to Plaintiff's redline revisions by saying, "[w]e will integrate your comments." *Id.* Ex. B at 1. Defendants contend that they are not bound by that draft, arguing that a final version was never executed and that the Jalou officer did not have the authority to bind L'Officiel, the entity that actually employed Plaintiff. Declarations submitted by Defendants affirm that "[t]he draft agreement Bartman filed with the Court was never finalized and the parties did not reach agreement on the terms," and that Defendants "never agreed to pay [Plaintiff] any salary in the event that her employment terminated under any circumstances." Dkt. 19 ("Eymere Dec.") ¶¶ 4-5; Brown Dec. ¶ 6 ("Plaintiff was employed by L'Officiel and there is no employment agreement between those parties."); Dkt. 21 ("Andretta Dec.") ¶ 4 (declaration by Jalou officer stating that her "email . . . was not meant as a ratification of the draft employment agreement").

"If the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has

been written out and signed." *Moulton Paving, LLC v. Town of Poughkeepsie*, 950 N.Y.S.2d 762, 765 (App. Div. 2012). Plaintiff counters that under New York law, "parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Winston v. MediaFare Entmt. Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). While this latter proposition is true, Defendants have cited evidence of their intent *not* to be so bound. *See, e.g.*, Bartman Aff. Ex. B at 1 (email from Jalou officer after receiving Plaintiff's proposed revisions to the draft contract stating that "[w]e can have a final version of your contract to be signed when you come here in Paris" and that "[it] is not good . . . [that] you don't have a contract"); *see also id.* at 2 (Plaintiff asking, "Who is my employment contract with?" when sending the draft contract with her proposed revisions). They have also submitted email exchanges between the parties, dated after Plaintiff sent these proposed revisions, that raise the inference that there was no operative employment contract. Andretta Dec. Ex. 1 at 1 (email from Plaintiff to Jalou officer proposing that she could "work as a consultant" and that she could not obtain certain health insurance "unless I am an employee").

If the evidence of Defendants' intent not to be bound is proven at trial, it would provide a complete defense to Plaintiff's contract-based claims. *See Winston*, 777 F.2d at 80 ("[I]f either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract."). And contrary to Plaintiff's position, this evidence is highly specific, constituting more than mere "conclusory denials" of her claims. *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001). Given this disputed factual issue, the Court finds that the proffered defense is "meritorious."[4] Defendants raise similarly legitimate factual disputes regarding Plaintiff's claim

---

[4] Even taking as true Plaintiff's allegations that she had a contract with Defendants, Defendants' argument that Plaintiff's resignation was not for "good reason" would also constitute a complete defense to Plaintiff's contract-based

that is not dependent on the existence of a contract—her allegation that she was not reimbursed for approximately $48,000 in expenses she incurred on Defendants' behalf. *See* Eymere Dec. ¶ 7 (declaration of L'Officiel CEO stating that he informed Plaintiff "that she would be reimbursed for her business expenses"); Andretta Dec. ¶ 9 (Jalou officer explaining that she directed Plaintiff to reimburse herself on a monthly "reasonable" schedule).

In sum, after balancing the Rule 55(c) factors and keeping in mind "whether the entry of default would bring about a harsh or unfair result," *Enron*, 10 F.3d at 96, the Court finds that Defendants have established good cause to set aside the entry of default.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is denied and the entry of default is vacated. The Clerk of Court is respectfully directed to terminate the motion at docket number 13. No later than December 3, 2021, Defendants shall move to dismiss or otherwise respond to the Complaint.

SO ORDERED.

Dated:   November 15, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge

---

claims. Specifically, Defendants assert that Plaintiff resigned to take a higher-paying job with another company, which does not qualify as "good reason" and therefore does not trigger the payment provisions in the purported contract. Plaintiff explains that she took the other job only after Defendants had "refused to fully reimburse duly incurred expenses" that she acquired on their behalf, making her believe she had no choice but to resign. Dkt. 25 ("Bartman Reply Dec.") ¶ 6-7. But Defendants have offered specific evidence rebutting this factual allegation as well. Eymere Dec. ¶ 7 (declaration of L'Officiel CEO stating that he informed Plaintiff "that she would be reimbursed for her business expenses").