USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 09/02/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERICA BARTMAN,

    Plaintiff,

v.

L'OFFICIEL USA INC., GLOBAL EMERGING MARKETS NORTH AMERICA INC., and JALOU PUBLISHING, INC. a/k/a JALOU MEDIA GROUP,

    Defendants.

No. 21-CV-1987 (RA)

MEMORANDUM
OPINION AND ORDER

---

RONNIE ABRAMS, United States District Judge:

Plaintiff Erica Bartman commenced this action against Defendants L'Officiel USA Inc., Global Emerging Markets North America Inc. ("GEM"), and Jalou Publishing, Inc., asserting claims for breach of contract; violations of the New York Labor Law ("NYLL"); and unjust enrichment/quantum meruit. Before the Court is Defendants' motion to dismiss. For the reasons that follow, the motion is granted, albeit with leave to amend.

## BACKGROUND

The Court draws the following facts from Plaintiff's Complaint, as well as from a draft document entitled "Employment Agreement," which the Court deems to be incorporated into her Complaint by reference, in her possession, and/or relied upon by her in bringing suit. *See* Pl.'s Aff. in Support of Motion for Default Judgment ("Default Judgment Aff.") ¶ 9 & Ex. A; *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

Plaintiff is a "well-regarded and experienced entrepreneur and media executive" in the business of publishing, business and/or revenue development, journalism, advertising, and

branding. Compl. ¶¶ 15, 23. Defendants are three media groups that "jointly and/or severally" own a fashion magazine named L'Officiel USA, as well as related digital platforms. *Id.* ¶¶ 17-19, 24-29. Plaintiff alleges that "on or about and between February 2018 and August 2020, [she] was hired by Defendants L'Officiel, GEM, and/or Jalou, as their General Manager and/or Chief Revenue Officer, with responsibilities which included, among other things, sales and/or advertising revenue development for L'Officiel USA." *Id.* ¶ 30. Specifically, she asserts that "on or about February 26, 2018, pursuant to an agreement, defendants, jointly and/or severally, promised and agreed to pay to plaintiff wages, bonuses, commissions and/or benefits as compensation for plaintiff's work, labor and services rendered on their behalf, and in particular defendants, as aforesaid, agreed to pay to plaintiff a guaranteed annual base salary in the sum of $300,000, together with various bonus and incentive increases, benefits and expense account allowance." *Id.* ¶ 38. That agreement was allegedly "amended" "on or about and between June 4, 2018 and September 12, 2019" to increase plaintiff's annual salary to $345,000. *Id.* ¶ 39. Pursuant to either the first agreement, the amended agreement, or both, Plaintiff was "authorized to advance reimbursable moneys for reasonable expenses incurred on behalf of the defendants . . . not to exceed the annual sum of $50,000." *Id.* ¶ 40.

Also pursuant to one or both of the agreements, if Plaintiff was terminated after two years of employment for any reason or resigned at any point in her employment for "good reason," she would be paid severance equal to twelve months' salary plus an earned bonus on all closed and signed revenues that were attributable to her. *Id.* ¶¶ 41-42. "Good reason" was allegedly defined in the agreement to include, among other things, non-payment of salary, earned bonuses, or approved expenses. *Id.* ¶ 43.

2

In connection with a prior motion for default judgment filed in this case, Plaintiff submitted a document that she represents to be the employment agreement on which her allegations are based. *See* Default Judgment Aff. ¶ 9. That document is a redlined draft titled "Employment Agreement" and dated June 3, 2019—*i.e.*, about halfway through her alleged employment period. It states that Plaintiff is to be employed by "Jalou Media Group and/or the replacement name or company that may be formed in the future." Default Judgment Aff. Ex. A at 1. The document also indicates that the entity "OFFICIEL USA INC." had previously been listed as an employer but was later deleted. *See id.* It is unclear whether or when this draft agreement was ever finalized and/or signed, or whether and to what extent any such signed contract incorporated the proposed edits that were demarcated in redline in the draft document. The salary listed in this draft agreement is $345,000, suggesting that it corresponds to the "amended" agreement described in the Complaint. *See id.* at 2. The document states, albeit in redline, that "[s]everance benefits apply if employee resigns for good reason such as . . . non payment of salary or earned bonuses or approved expenses." *Id.* It further provides that Plaintiff is authorized to incur reasonable reimbursable expenses up to $50,000 per year. *Id.* at 6.

According to Plaintiff, Defendants refused to reimburse her for over $48,000 of approved expenses that she incurred on their behalf during her employment. Compl. ¶ 44. She contends that on or about August 7, 2020, she both "resigned from her employment . . . 'for good reason'" and "was involuntarily terminated from her employment." *Id.* ¶¶ 46-47. Defendants allegedly breached the employment agreement by then failing to pay her "(a) the annual base salary in the amount of $345,000 [*i.e.*, severance payment]; (b) the earned bonus, commissions, benefits and incentive payments, in a sum to be determined, and (c) the un-reimbursed incurred expenses incurred by plaintiff on behalf of defendants, in an amount exceeding $48,000." *Id.* ¶ 50.

3

Plaintiff brings claims for breach of contract, violation of the NYLL, and unjust enrichment/quantum meruit.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *id.*; claims that are merely "conceivable" or "consistent with" liability are insufficient, *Twombly*, 550 U.S. at 545, 570. In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). The Court need not, however, credit factual statements that are conclusory, *see Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017), or "threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678.[1]

## DISCUSSION

### I. Plaintiff's Contract and Quasi-Contract Claims Are Dismissed

Defendants' threshold argument is that Plaintiff has failed to plead the existence of an enforceable agreement between Plaintiff and Defendants. The Court agrees. Viewing the Complaint as a whole—particularly in conjunction with the document that is incorporated by

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

reference as the employment agreement—its allegations cannot support the existence of a contract between the parties.

Plaintiff asserts that Defendants "jointly and/or severally" made various promises pursuant to "an agreement," and that this agreement was amended to its operative form at some unspecified point within a time period spanning over fifteen months. Compl. ¶¶ 38-39. As an initial matter, these statements are not specific enough to support an inference that a contract existed, as they "fail to indicate," among other things, "whether the contract was oral or written, express or implied, who the actual parties to the contract were, or when the contract was entered into." *Niagara Restitution Servs., Inc. v. Degen*, No. 15-CV-0580 (FPG), 2016 WL 3004665, at *3 (W.D.N.Y. May 23, 2016). *Accord Ostrolenk Faber LLP v. Unigene Lab'ys, Inc.*, No. 12-CV-3991 (HB), 2012 WL 3114742, at *2 (S.D.N.Y. Aug. 1, 2012).

Compounding this overarching concern is the fact that the Complaint is internally inconsistent, because it asserts that Plaintiff both "resigned" and was "involuntarily terminated" on the same day. Compl. ¶¶ 46-47. Given that Defendants are not obligated to pay severance if Plaintiff's employment was terminated after fewer than two years, this inconsistency undermines the core of Plaintiff's claims and calls into question whether the Court must accept either of these critical allegations as true. *See Grasso v. Donnelly-Schoffstall*, No. 21-1021, 2022 WL 728839, at *1 (2d Cir. Mar. 11, 2022) (affirming "the district court's conclusion that the vague and internally inconsistent allegations in [the plaintiff's] complaint failed to provide an objective method for determining [the defendant's] obligations under the alleged contract"); *Pierce v. Fordham Univ., Inc.*, No. 15-CV-4589 (JMF), 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ("It is well established that, where a plaintiff's own pleadings are

internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.").

Even if the Complaint's allegations are sufficiently specific and the contradictions therein can be overcome, those allegations cannot support Plaintiff's claim in light of the document in the record that Plaintiff now represents to be the agreement in question. *See 380544 Can., Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 215 (S.D.N.Y. 2008) ("Where the plaintiff's allegations are contradicted by a document that the complaint incorporates by reference, the document controls."). That document—which was submitted in connection with a motion for default judgment—on its face is an unsigned and redlined draft that appears to have been in the process of being edited, calling into question whether the parties intended to be bound by it. Reinforcing this conclusion is that many of the critical provisions in that document—including the identity of Plaintiff's employers and the clause that guaranteed Plaintiff's severance payment if she resigned for "good cause"—are in the form of unaccepted track changes. *See, e.g.*, *O'Connor-Goun v. Weill Cornell Med. Coll. of Cornell Univ.*, 956 F. Supp. 2d 549, 553-54 (S.D.N.Y. 2013) (finding that defendants did not intend to be bound by a draft that "contained blank spaces" and was "facially incomplete"). In her response to the motion to dismiss, Plaintiff argues that Defendants did bind themselves when Defendants' agent allegedly ratified the document (including the unaccepted track changes) over email. This argument, however, relies on documents and factual assertions that do not appear in the Complaint and that are not incorporated by reference into or integral to the Complaint. The Court thus may not entertain them. In short, even construing the Complaint

6

in the light most favorable to Plaintiff cannot permit the reasonable inference that this "agreement" is an enforceable contract.

Finally, were the Court to accept that this document bound the parties referenced in it, that fact would still not save Plaintiff's claims, because the plain text of the agreement contradicts her allegation that she had a contract with *Defendants*. Namely, it states that it is an "employment agreement" between Plaintiff and "Jalou Media Group and/or the replacement name or company that may be formed in the future." Default Judgment Aff. Ex. A at 1. "Jalou Media Group" appears to be a separate entity from any Defendant. Although Plaintiff asserts that Jalou Publishing Inc. is "also known as" Jalou Media Group, she alleges no facts that would support treating these two companies as one. Moreover, the draft agreement makes no mention of either L'Officiel USA Inc. or GEM. Of course, "a non-party to a contract is not bound by the contract." *Javier v. Beck*, No. 13-CV-2926 (WHP), 2014 WL 3058456, at *9 (S.D.N.Y. July 3, 2014) (citing *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985)). Thus, to the extent the Court does consider this document to be an enforceable contract, it contradicts Plaintiff's allegations that the named Defendants entered into an employment agreement with her. *See Lehman v. Garfinkle*, No. 08-CV-9385 (SHS), 2009 WL 2973207, at *7 (S.D.N.Y. Sept. 16, 2009) (dismissing a contract claim against individual defendants when documents that the plaintiff cited showed only that the plaintiff was in contractual relationships with various business entities, not the individual defendants).

For these reasons, Plaintiff's contract claim cannot be sustained. The Court will, however, grant Plaintiff leave to amend that claim if she has a good-faith basis to do so.

The Court also dismisses Plaintiff's quantum meruit/unjust enrichment claim.[2] Although this claim does not depend on the existence of a valid and enforceable contract, it suffers from the

---

[2] Although Plaintiff structures her unjust enrichment and quantum meruit claims as two separate claims, "[t]hese two claims are essentially one in the same; as a result, [Plaintiff's] two separate causes of action are consolidated into one

7

same deficiency as does the contract claim. That is, given the vagueness of the allegations in the Complaint, particularly when considered in light of the draft agreement contradicting those allegations, the Court cannot reasonably infer that any named Defendant actually employed Plaintiff—and thus that any named Defendant wrongfully benefitted from the failure to pay Plaintiff severance or the failure to reimburse Plaintiff for business expenses. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006) (explaining that unjust enrichment requires "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution").[3]

Finally, to the extent Plaintiff asserts that she is entitled to bonuses and/or incentive payments, this claim fails whether it is considered under any legal theory, because Plaintiff has failed to plead that she earned any such bonuses by bringing in revenues. *See* Compl. ¶ 42 (alleging that if Plaintiff resigned for good reason, she was to be paid "an earned bonus based on all closed and signed revenues attributed to plaintiff at the time of such termination").

Again, Plaintiff may also amend these claims if she can do so in good faith.

## II.     Plaintiff's NYLL Claims Are Dismissed

Plaintiff's claims under the NYLL are similarly dismissed. First, the "[f]ailure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law." *Simas v. Merrill Corp.*, No. 02-CV-4400 (RCC), 2004 WL 213013, at *2 (S.D.N.Y. Feb. 4, 2004)

---

for purposes of this decision." *Strategic All. Partners, LLC v. Dress Barn, Inc.*, 386 F. Supp. 2d 312, 318 (S.D.N.Y. 2005). *See also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 172 (2d Cir. 2005); *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 60 (2d Cir. 1997) (discussing quantum meruit and unjust enrichment together). Indeed, "in order to recover on a claim of quantum meruit, a party must prove the existence of unjust enrichment." *Growblox Scis., Inc. v. GCM Admin. Servs., LLC*, No. 14-CV-2280 (ER), 2015 WL 3504208, at *9 n.22 (S.D.N.Y. June 2, 2015).

[3] In addition, it is not clear to the Court that a claim for severance payment can be sustained on an unjust enrichment theory. *See Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 97 (2d Cir. 1994) (explaining that quantum meruit permits recovery for "the reasonable value of . . . services rendered and equipment . . . provided"). It need not resolve such doubts here given that the entirety of Plaintiff's unjust enrichment/quantum meruit claim fails for independent reasons.

(quoting *Tierney v. Capricorn Investors, L.P.*, 189 A.D.2d 629, 632 (N.Y. App. Div. 1993)). *Accord O'Grady v. BlueCrest Cap. Mgmt. LLP*, 646 F. App'x 2, 4 (2d Cir. 2016).

But if Plaintiff had pleaded the existence of such a contractual right, her NYLL claims would still fail—either because she is not entitled to the funds she seeks as an executive, or because she has failed to plead entitlement to the funds she seeks. Although highly compensated executives fall under the statute's definition of employees generally, *see Pachter v. Bernard Hodes Grp., Inc.*, 891 N.E.2d 279, 282-83 (N.Y. 2008), they are explicitly excluded from certain subsections of the statute, including section 198-c. *See* N.Y. Lab. Law § 198-c ("This section shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of nine hundred dollars a week."). Because it is section 198 that protects "benefits or wage supplements," including "reimbursement for expenses" and "separation . . . pay," *id.*, Plaintiff may not recover those funds. *See Fraiberg v. 4Kids Ent., Inc.*, 75 A.D.3d 580, 583 (N.Y. App. Div. 2010) (holding that where a "plaintiff acknowledged that she worked in a bona fide executive, administrative or professional capacity and earned in excess of $900 per week," "she could not assert a claim . . . to compel the payment of her severance package"); *accord Wagner v. Edisonlearning, Inc.*, No. 09-CV-0831 (SAS), 2009 WL 1055728, at *2 n.25 (S.D.N.Y. Apr. 17, 2009) (explaining that "section 198-c, which protects severance payments, also specifically excludes executives"). Nor is Plaintiff, as an executive, "entitled to statutory attorney's fees under section 198(1-a) . . . [for] assert[ing] a successful common-law claim for unpaid wages." *Jia Chen v. Antel Commc'ns, LLC*, No. 14-CV-6629 (SJF), 2015 WL 5793404, at *7 (E.D.N.Y. Sept. 30, 2015), *aff'd sub nom. Chen v. Antel Commc'ns, LLC*, 653 F. App'x 43 (2d Cir. 2016) (quoting *Pachter*, 891 N.E.2d at 283).

Finally, Plaintiff alleges that she is entitled to earned bonuses and/or incentive payments. Although non-discretionary bonuses that have been earned and vested prior to an employee's termination are "wages" that executives are not precluded from recovering, *see Ryan v. Kellogg Partners Institutional Servs.*, 968 N.E.2d 947, 956 (N.Y. 2012), Plaintiff has failed to plead that she earned any such bonuses by bringing in revenues. *See* Compl. ¶ 42 (alleging that if Plaintiff resigned for good reason, she was to be paid "an earned bonus based on all closed and signed revenues attributed to plaintiff at the time of such termination").

### III. Leave to Amend

"[A] plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint." *Obra Pia Ltd. v. Seagrape Invs. LLC*, No. 19-CV-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021). Accordingly, the Court grants Plaintiff leave to amend her claims, but only to the extent she has a good-faith basis to do so in light of the reasoning herein.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted without prejudice to amendment. The Clerk of Court is respectfully directed to terminate the motion at docket 29. If Plaintiff intends to file an Amended Complaint, she shall do so by no later than October 3, 2022. Failure to file an Amended Complaint by that date will result in dismissal of this case with prejudice.

SO ORDERED.

Dated: September 2, 2022
New York, New York

_____
Hon. Ronnie Abrams
United States District Judge